IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>MATEO VENTURA,<br><br>Defendant. | Case No. 23-4339-DHH |

### GOVERNMENT'S SUPPLEMENTAL MOTION IN SUPPORT OF PRETRIAL DETENTION

Defendant Mateo Ventura ("Defendant") has been charged with concealing the source of material support or resources with the intent that the material support or resources be provided to a foreign terrorist organization, in violation of 18 U.S.C. § 2339C(c). The charge is a felony that carries a ten-year statutory maximum sentence. The government respectfully submits that the Defendant must remain detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) and (f)(2)(A).

First, this offense carries a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(C). This court must therefore presume that Defendant is both a danger to the community and a risk of flight. *See U.S. v. Rodriguez*, 408 F. Supp. 3d 20, 21 (D. Mass. 2019). The Court may release him *only* after a showing by the Defendant that either (1) by a preponderance of the evidence there are conditions of release that will assure his appearance, or (2) by clear and convincing evidence there are conditions that will assure he is not a danger to another person or the community. *Id*. The Defendant can make no such showing here.

1

Second, the Defendant is a danger to the community. The Defendant has shown an obsession with violence – he indicated a desire to commit a suicide attack, attempted to travel to join ISIS to participate in its operations, maintained a cache of over 100 horrifically violent videos, and researched homemade grenades, fertilizer bombs, and how to obtain firearms. The Defendant also sent a series of harassing communications to an FBI case agent, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Despite having been given every opportunity to change his behavior, the Defendant persisted in his conduct.  There is no condition that will reasonably protect the safety of the community.

Third, the Defendant is a flight risk. He made at least three attempts to leave the United States and join ISIS. He obtained a passport, credit cards, and airline tickets. He inquired about traveling to Russia to join the Wagner Group of mercenaries in its fight against Ukraine and conducted internet searches about traveling to other European nations. In short, the Defendant wants to leave the United States. The Defendant's desire to depart is unlikely to lessen after being charged with a federal terrorism offense. Consequently, there is no condition or combination of conditions that will reasonably assure the appearance of the Defendant.

As a result, the government respectfully submits that the Defendant must be detained.

**I.      STATEMENT OF PRIOR PROCEEDINGS**

On June 7, 2023, the government charged the Defendant by criminal complaint with a violation of 18 U.S.C. § 2339C(c). The Complaint alleges that between January 25 and May 16, 2023, the Defendant concealed or disguised the nature, location, source, ownership, or control of material support or resources in the form of monetary instruments (to wit: gift cards) with the intent that such material support was to be provided to the Islamic State of Iraq and al-Sham ("ISIS").

On June 8, 2023, the Defendant was arrested. On that same day, at the Defendant's initial appearance, the government moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and (f)(2)(A). The government now supplements its earlier, oral motion for pretrial detention.

## II.     STATEMENT OF PROFFERED FACTS

The government proffers facts herein in support of the Defendant's danger to the community and risk of flight through counsel and the attached Exhibits A through G, as well as the affidavit of FBI SA Paul Longo in support of the Complaint.[1]

### A.     The Defendant Pledged Allegiance to ISIS.

Nearly two years ago, the Defendant first pledged his allegiance to ISIS. On or about August 4, 2021, the Defendant sent an audio file to an individual he believed to be an ISIS supporter living in the Middle East – but who was in fact an undercover FBI employee (online covert employee or "OCE") – in which he pledged his allegiance to the leader of ISIS, Abu Ibrahim Al-Hasimi Al-Qurashi. *See* Complaint, ¶ 16. On that date, the defendant stated:

> In the name of Allah, the most merciful, the most beneficent, I give the pledge of allegiance to Islamic Caliphate, the Shaykh, Abu Ibrahim al-Hashimi al-Qurashi, to hear and obey, in what is pleasing and displeasing, in times of ease and hardship, and selflessly, and to not contest argue question the matter of authority with those in charge, emir of Wilayat amaliyat askarat hijrat and such, except if we see open disbelief blatant kufr, which we have clear proof from Allah for, and to say the truth wherever I am, I am

---

[1] The Federal Rules of Evidence do not apply to pretrial detention hearings. *See* 18 U.S.C. § 3142(f)(2)(B) ("The Rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* FED. R. EVID. 1101(d)(3) (exception to application of federal evidence rules for "miscellaneous proceedings such as . . . considering whether to release on bail or otherwise."). Defendants at pretrial detention hearings are expressly authorized by the Bail Reform Act of 1984 to "present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2)(B). Because the Act ratified existing practice, the government is likewise authorized to present information by proffer. On June 8, 2023, after the Defendant's initial appearance, defense counsel and the government agreed to proceed by proffer.

3

>not afraid of Allah's suitable reprimand, and Allah is the witness to what I have said.
>
>*Id.*

After making this pledge, the Defendant repeatedly attempted to support ISIS – namely, by providing donations and by attempting to travel to the Middle East to join ISIS.

### B.   The Defendant Agreed to Provide Donations to ISIS.

On the day after he first pledged his allegiance to ISIS's leader – i.e., on or about August 5, 2021 – the Defendant told the OCE that he would be willing to give "sadaqah," or donations, to support ISIS. Complaint, ¶¶ 17-18. He gave his first donation that day, in the form of a $25 gift card. He told the OCE that he wanted the OCE to "sell [the gift card] on darkweb" so that the OCE could send the proceeds "straight to mujahideen for help in fight against kuffar." *Id*. ¶ 19.

On or about August 25, 2021, the FBI executed a search warrant at the Defendant's residence, and subsequently conducted interviews with the Defendant and his father on or about August 25, 2021, March 16, 2022, and September 21, 2022. During those interviews, the FBI informed the Defendant they were concerned about his activities (including consuming ISIS propaganda and visiting online ISIS chat websites) and recommended that he refrain from visiting those websites.

Nonetheless – despite the execution of the search warrant and the Defendant's knowledge that the FBI was concerned about his activities – between November 2021 and August 2022, the Defendant provided an additional $940 in donations to the OCE with the intent that the proceeds be used to support ISIS. Subsequently, between January and May 2023 (after turning eighteen years old), the Defendant provided a further $705 in donations to the OCE with the intent that the proceeds be used to support ISIS.

### C. The Defendant Attempted to Travel to Join ISIS in 2022.

On or about February 1, 2022, the Defendant purchased a ticket on Qatar Airways with an ultimate destination of Cairo, Egypt. He arrived at Logan Airport on February 1, 2022 and approached the ticket counter to obtain his boarding pass. At that point, the ticket agent requested that the Defendant produce both his U.S. passport and a negative PCR test (i.e., a negative COVID test) to board the flight. The Defendant told the ticket agent that he did not have a PCR test and was told that he would be unable to board. According to the ticket agent, the Defendant was not acting normal, was not able to make eye contact, and was not able to hold a conversation longer than a one-word answer. *See* Ex. A.

Later that night, at approximately 12:50am on February 2, 2022, a Massachusetts State Police Trooper approached the Defendant, who was sitting next to the express checkout for PCR Covid Testing. When asked why he was there, the Defendant said he was trying to fly to Cairo "to see his family,"[2] but he did not have a negative PCR test and was waiting for the PCR testing site to open. Upon reviewing the Defendant's passport, the Trooper identified the Defendant as a juvenile and informed him that he would return the Defendant to his residence. The Trooper drove the Defendant home, where he explained what had happened to the Defendant's father. The Trooper also returned the Defendant's passport to the Defendant's father. *See* Ex. B.

Afterwards, the Massachusetts State Police filed a report with the Massachusetts Department of Children & Families, indicating that the Defendant "was located in Logan Airport" and that the Defendant's father "was unaware where the child was." *See* Ex. C.

---

[2] The government does not believe that the Defendant has family in Cairo.

>   D.   **After Turning Eighteen, the Defendant Made Two More Attempts to Travel to Join ISIS, and Discussed His Intention to Conduct a Suicide Attack Upon Arrival.**

In or around September 2022, when he was still seventeen years old, the Defendant broke off contact with the OCE. He told the OCE that he could no longer "go for hijrah" (i.e., travel to join ISIS) because he "get hurt very bad in fall and can no longer walk." Complaint, ¶ 20.

Approximately four months later, however, on or about January 25, 2023, the Defendant contacted the OCE again. He stated that he wanted to travel to join ISIS and that he wanted to "give sadaqah" before he left. Complaint, ¶ 21. The following day, the Defendant again swore his allegiance to the "Islamic State Caliphate." *Id.*, ¶ 28. The Defendant also told the OCE that he wanted "to give [his] life for jihad fisabillah [for the sake of Allah]," that he wanted to perform an "ishtishadi" attack,[3] and that he wanted to fight for ISIS for a couple of months before becoming a martyr via the ishtishadi operation – in other words, the Defendant wanted to conduct a suicide attack. *Id.*, ¶¶ 26-27.

On or about February 28, 2023, the Defendant made his second attempt to travel to ISIS by attempting to book a ticket for later that day to Cairo, Egypt, with a one-hour layover in Zurich, Switzerland. In fact, he booked tickets on six separate occasions within a one-hour period, but his credit card failed to work, and as a result the tickets were not issued. He subsequently told the OCE that his "card fail[ed]" and that he would "replan." *Id.*, ¶¶ 32-33.

On or about April 10, 2023, the Defendant purchased a ticket on Turkish Airlines for later that day with an ultimate destination of Cairo, Egypt. He also sent a screenshot confirming his itinerary to the OCE. However, the Defendant did not depart his residence that evening to

---

[3] An "ishtishadi" attack is a martyrdom or suicide attack in which the attacker is killed.

join the flight. *Id*., ¶ 38. As the Defendant later told the OCE, "[m]any things happen not go as plan," including that his family did not go to sleep at the "right time," that his Uber app did "not work," and that by the time the Defendant's family was asleep, it was "too late for make flight and had to cancel." *Id*., ¶ 49.

### E. The Defendant Sent Harassing Messages to an FBI Case Agent and Attempted to Find Her Personal Information.

Beginning on or about January 30, 2023, the Defendant began sending[4] a series of harassing messages to a female FBI agent ("FBI Agent 1") who was involved in the execution of the August 2021 search warrant and whose email address the Defendant possessed. In total, between January 30, 2023, and May 10, 2023, the Defendant sent FBI Agent 1 over four dozen emails. A sampling of those emails is below:

- On or about January 30, 2023, the Defendant sent two pictures of himself wearing a full-face covering, a video of ISIS propaganda, and a close up picture of the Defendant's face.
- On or about February 5, 2023, the Defendant sent a pornographic image of a female who appeared to be a member of law enforcement.
- On or about February 5, 2023, the Defendant sent an email included approximately 23 pornographic videos, fifteen pornographic images (two of a female who appears to be a member of law enforcement), eleven images or videos of dead bodies, two videos of people eating live mice, four videos of people being shot point blank, two ISIS propaganda videos, two videos of someone committing suicide by gun, an image of a solider holding a decapitated head, an image with the words "Kill Someone. It's ok", a video of three children speaking before an explosion occurs, a video of a man being trapped and killed by a conveyor belt, and a video of a man spraying himself with a substance before lighting his beard/face on fire.
- On or about February 5, 2023, the Defendant sent approximately two pornographic images, one pornographic video, three ISIS propaganda videos, two ISIS beheading videos, an image which reads "Dear federal agents All my posts are serious and I am a threat to society", a video of three children speaking before

---

[4] Some of these emails were sent from email addresses known to be utilized by the Defendant, and others were sent from "Protonmail" addresses for whom the user cannot be identified. However, based on the context and the similarities between the communications, and the fact that at least one of these Protonmail accounts has been linked to a phone seized from the Defendant on June 8, 2023, the government believes that they were sent by the Defendant.

- an explosion occurs, a video of an individual holding a large knife standing next to an individual who is kneeling and wearing a mask, a video of a man being blown up after loading and firing projectiles, a video of planes hitting the Twin Towers on September 11, 2001 followed by multiple clips of Osama Bin Laden, and a video depicting dead bodies.
- On or about February 5, 2023, the Defendant sent approximately four pornographic videos, a link to a pornography website, two images of dead bodies, a video depicting dead bodies, a video of a man being shot point blank, two images of men holding assault rifles, a video of soldiers shooting into an oncoming Russian army patrol, and a link to a likely Russian military social media page soliciting donations.
- On or about February 6, 2023, the Defendant sent approximately two pornographic videos and two pornographic images.
- On or about March 27, 2023, the Defendant sent an email with a pornographic link.
- On or about May 10, 2023, the Defendant sent a photograph of a woman covered in blood.

The Defendant also attempted to locate FBI Agent 1's personal information. He signed up to receive email "alerts" on FBI Agent 1 from the website whitepages.com, which is a website that provides the residential addresses and personal contact information of people across the United States.

    **F.**    **The Defendant Inquired about Traveling to Russia to Join the Wagner Group Fighting Against Ukraine.**

The Defendant's attempts to travel abroad to commit violence are not limited to ISIS. In or around late April 2023, the Defendant contacted an individual who purported to be affiliated with the Wagner Group – a Russian paramilitary or mercenary organization which plays a significant role in Russia's invasion of Ukraine. He told that individual that he wanted to "join Wagner," i.e., the Wagner Group. The Defendant also told that individual that he wanted to fight: "All I need is a visa brother and from there can go to Russia and just need contract for fight." *See* Ex. D.

### G. The Defendant's Concerning Internet Activities.

The Defendant also has recent internet activity that, combined with his other recent activities, raise serious concerns. A law enforcement review of the Defendant's internet activity through approximately January 31, 2023 revealed the following:

*Explosives*

Between November 2022 and January 2023, the Defendant searched the internet for the terms "homemade kurdish grenades," "Homemade grenades, Kurdish", and "suicide bomber".

*Firearms*

Between November and December 2022, the Defendant searched for (among other items relating to firearms) "massachusetts gun license references," "can massachusetts deny your gun license for no reason"; "buying a gun in new hampshire"; "NH gun laws"; "can landowners in new hampshire get a gun permit"; and "mass. certified firearms safety course".

The Defendant also visited pages about whether Massachusetts required gun licenses, about gun safety classes in Massachusetts (including in his hometown of Wakefield, Massachusetts), and about gun laws in New Hampshire.

*Other Violent Items*

On or about January 30, 2023, the Defendant searched "How long would it take to bleed out from a severed jugular artery" and "how long does it take to someone to bleed out if they slit their jugular vein."

*The Afterlife*

Between November 2022 and January 2023, the Defendant searched "what do muslims get in paradise" (on two separate occasions), "afterlife in islam", and "is there a life after death."

Case 1:23-mj-04339-DHH   Document 13   Filed 06/13/23   Page 10 of 19



*Travel*

Between December 2022 and January 2023, the Defendant searched the internet for "places to travel without visa", "do americans need a visa to go to Russia", "do you need a visa to go to germany", "does a US citizen need a visa to enter the Schengen area", and "if you are receiving a government check are you allowed to leave the country".

10



**J.    Execution of a Search Warrant at Defendant's Residence.**

On or about June 8, 2023, the FBI executed a search warrant at the Defendant's residence. Among other things, law enforcement located a handwritten note in the Defendant's bedroom which stated:

> If you say anything I will be tortured executed take this as a chance for revenge they ignored you're crys for help also mine they work for jews and this is my Revenge and it can also be yours I will forgive you for everything if you stay quiet you where right about them targeting me I know powerful people and this is my time for revenge with the sword of guadiance [sic] and truth
>
> give me a week then you can squeal that im gone I was than you can tell them done
>
> They caused all of this blood everywhere

*See* Ex. G.

The FBI also recovered an iPhone 12 belonging to the Defendant. Preliminary review of that phone identified over a hundred violent videos, including videos depicting beheadings, war, beatings, torture, terrorist attacks, animal abuse, suicide, white supremacy, pro-Nazi videos, and violence or abuse against women. These included:

- A video depicting instructions on how to create a fertilizer bomb;
- Videos that appear to show the Defendant taking a video of his computer screen that show information relating to smoke grenades;
- 42 videos depicting beheadings or executions, including 20 videos of ISIS beheadings or executions;
- 30 videos depicting war or combat, many focused on dead or decaying corpses, many taken from the Russo-Ukrainian conflict;
- Eleven videos relating to terrorist attacks or mass shootings, including a livestream of the May 14, 2022 mass shooting at Tops Supermarket in Buffalo, New York, a livestream of the March 15, 2019, shooting at a mosque in Christchurch, New Zealand, surveillance video of the March 13, 2019 school shooting in Suzano, Brazil, as well as stabbings and vehicular assaults;
- Ten videos depicting animal abuse, including cats lit on fire with a flamethrower, a rat tied to fireworks, explosives placed inside a chicken, and people biting off the heads of living animals;
- Videos depicting torture, persons' limbs being cut off or broken with sledgehammers, people being skinned alive, and people having their genitalia fed to or eaten by dogs while alive;
- Videos depicting violence towards women, including murder, rape, torture, and beatings;
- Videos depicting police shootings;
- A video calling for violence against police officers, which shows clips of officers being attacked, shot, lit on fire, and killed;
- Videos depicting suicide, including people jumping off buildings, people shooting themselves, and self-immolation; and
- Videos depicting white supremacy or pro-Nazi propaganda, including lynchings and beatings by the Ku Klux Klan, Nazi executions, and white supremacy groups burning LGBT flags.

In addition, a Motorola phone belonging to the Defendant found in his residence on June 8, 2023, contained a PDF file titled "How to Obtain a Working AK-47 in the Next 24 Hours."

### III.  STANDARD OF PROOF AND STATUTORY FACTORS.

Congress empowered judicial officers to release or detain defendants pending trial. 18 U.S.C. § 3141(a). Detention determinations proceed pursuant to the terms of 18 U.S.C. § 3142.

Under 3142(f)(1), the Court must hold a detention hearing when the case involves an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed (i.e., a violation of Section 2339C(c)). Under § 3142(f)(2), the Court must hold a detention hearing upon the government's motion (or *sua sponte*) when the case involves "a serious risk that [the defendant] will flee" or "a serious risk that [the defendant] will obstruct or attempt to obstruct justice." 18 U.S.C. § 3142(f)(2). Ultimately, the Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e); *U.S. v. Montalvo–Murillo*, 495 U.S. 711, 716–17 (1990).

The charge in this case – a violation of 18 U.S.C. § 2339C(c) – carries a *presumption* that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(C); 18 U.S.C. § 2332b(g)(5)(B)(i). In other words, "there is a presumption that [the Defendant] is both a danger to the community and a risk of flight." *Rodriguez*, 408 F. Supp.3d at 21. The Defendant "can rebut that presumption upon showing by a preponderance of evidence that there are conditions or a combination of conditions that will assure his appearance as required, or by clear and convincing evidence that there are conditions or a combination of conditions that will assure that he is not a danger to any other person and the community." *Id*. While the Defendant bears the burden of producing evidence to rebut that presumption, the government bears the ultimate burden of persuasion. *U.S. v. Gennaco*, 834 F. Supp.2d 38, 40 (D. Mass. 2011).

In evaluating whether conditions can reasonably be fashioned, the Court must consider the following: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3)

13

the defendant's history and personal characteristics; and (4) dangerousness. 18 U.S.C. § 3142(g).

With respect to dangerousness, the Senate Report accompanying the Bail Reform Act explains that dangerousness is not limited to just physical violence:

> The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.

S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195; *see United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("Danger, in this context, was not meant to refer only to the risk of physical violence.").

### IV.   ARGUMENT: THE DEFENDANT SHOULD BE DETAINED PENDING TRIAL.

#### A.   Nature and Circumstances of the Offense Charged – 18 U.S.C. § 3142(g)(1).

The seriousness of the offense undoubtedly supports detention. As noted above, a judicial officer's finding of probable cause that the defendant committed the charged offense (which occurred with the filing of the Complaint) creates a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(C). In other words, this is *precisely* the type of offense which merits detention.

#### B.   Weight of the Evidence Against the Person – 18 U.S.C. § 3142(g)(2).

The weight of the government's evidence is strong. The Defendant communicated with the OCE over the course of nearly two years. In that time, he repeatedly indicated a desire to travel to join ISIS with the intent to commit violence, repeatedly attempted to travel to ISIS,

14

repeatedly pledged his allegiance to ISIS or its leadership, and repeatedly made donations to ISIS with the specific intent that they go to support ISIS's violent activities. The communications include a video taken by the Defendant of himself to prove his identity to the OCE. *See* Complaint, ¶ 22.

      C.      **History and Characteristics of the Person – 18 U.S.C. § 3142(g)(3).**

The Defendant has shown a dangerous obsession with violence and suicide. As described above, he has:

- Stated that he wished to travel to join ISIS;
- Stated that he wished to fight with ISIS for a period of a few months before committing a suicide attack;
- Maintained communications with an individual he believed to be an ISIS supporter for nearly two years;
- Stated that he wished to travel to Russia to join the Wagner Group in order to fight in Ukraine;
- Maintained a large cache of over 100 exceptionally violent videos;
- Sent violent videos and images to FBI Agent 1;
- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- Conducted internet searches for "suicide bomber" and homemade grenades;
- Researched online how to build a fertilizer bomb;
- Researched online how to obtain firearms and firearms licenses;
- Researched online how long it takes for a person to die after their jugular vein is slit; and
- Researched online suicidal ideation.

The Defendant has also shown a strong desire to leave the United States. As described above, he made at least three attempts to travel to join ISIS over the past seventeen months, including at least twice purchasing a ticket, and once arriving at Logan Airport. He also inquired about traveling to Russia, as well as other European countries.

The Defendant has also shown deceit. For example, he apparently deceived his father, with whom he lived, when he purchased tickets in order to travel to join ISIS: first, the Defendant's father was unaware that the Defendant had left the house in February 2022 to go to

Logan Airport, and second, the Defendant understood that he needed to wait until his father was asleep to travel to Logan Airport in April 2023.

The Defendant is also a flight risk:

- The Defendant has resided with his father, who has shown little to no concern about the Defendant's activities – despite knowing for nearly two years that the FBI has concerns about the Defendant's behavior;
- The Defendant's father has shown virtually no ability to control his son's behavior, and surveillance indicates that the Defendant's father is often away from the residence during much of the day;
- The Defendant's mother did not have custody of the Defendant beginning when he was approximately one year old;
- ▮
- The Defendant is not employed;
- The Defendant has experience obtaining a passport, obtaining credit cards, using credit cards, purchasing tickets, researching travel, and traveling to the airport; and
- The Defendant has shown an ability to reach out to third parties he believes reside in other countries for aid in leaving the United States.

**D.  Nature and Seriousness of the Danger to Any Person or the Community – 18 U.S.C. § 3142(g)(4).**

The Defendant's actions reveal a person who is a clear danger to other persons and to the community. He sent numerous harassing messages to FBI Agent 1 and researched her residence – including maintaining "alerts" from whitepages.com about where she lives.  He wrote a message discussing his "Revenge" and how those against whom he had grievances "work for jews," which concluded with the ominous phrase "They caused all of this blood everywhere." And he researched homemade grenades, fertilizer bombs, suicide attacks, and how to obtain firearms.

16

This alone – harassment, stalking, veiled threats, anti-Semitic language, and learning how to obtain or build weapons – would be sufficient to find that the Defendant is a danger. When coupled with his efforts to travel to join ISIS, as well as the instant charges here – providing donations with the intent that they support ISIS's violent activities – the evidence is overwhelming.

But even that is not all. The Defendant is also a danger to himself. Permeating the Defendant's activities is a suicidal ideation – a seeming obsession with death, with suicide, and with suicide attacks. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As a result, the Defendant is a danger to himself, to others, and to the community.

## V.     CONCLUSION

There is a rebuttable presumption in this case that the defendant should be detained. Even were there not, it is clear, based upon the foregoing, that no conditions of release will reasonably assure the Defendant's appearance, the safety of any person or the community, or the integrity of this proceeding. Accordingly, the government requests the Court order the Defendant detained prior to trial.

The government further requests that, if the Court is inclined to release the Defendant on conditions, it stay its order for such time as to permit the government to file a motion for revocation of the order of release under 18 U.S.C. § 3145(a).

Date:  June 13, 2023                                                               Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     */s/ Timothy H. Kistner*
         Timothy H. Kistner
         Laura J. Kaplan
         Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that this document was filed under seal and was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                */s/ Timothy H. Kistner*
                                                Timothy H. Kistner
                                                Assistant U.S. Attorney

Date: June 13, 2023